UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAWN A GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:20-CV-00969-RHH |
| ) | |
| MICHELE BUCKNER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Shawn Green ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) The State has filed a response. (ECF No. 15.) The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 17.) For the reasons that follow, the petition will be denied.

**I.    FACTUAL BACKGROUND**

On October 24, 2016, Petitioner was sentenced to life imprisonment for murder in the second degree. (ECF No. 1.) Petitioner's conviction arose out of the burglary and assault of a Mr. Robert Willhite on July 25, 2014 in Pulaski County. Petitioner and another individual broke into Mr. Willhite's home with the purpose of stealing a coin collection. During the burglary and stealing, Petitioner and his co-defendant beat Mr. Willhite, then left his residence. Mr. Willhite initially survived the attack but his physical condition deteriorated, and on August 14, 2014, he passed away as a result of his injuries. (Resp't Ex. B at 53, 56-57.)

According to 28 U.S.C. § 2254(e), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." During Petitioner's post-conviction appeal, the Missouri Court of Appeals summarized the relevant facts as follows:

> Green was charged by superseding indictment with the following ten counts alleging offenses that occurred in July 2014: the class A felony of murder in the second degree for killing Robert Willhite by beating him during the "perpetration of the class B felony" of burglary in the first degree "while acting in concert with another" (Count 2); robbery in the first degree (Count 3); burglary in the first degree (Count 4); felonious restraint (Count 5); stealing a firearm (Count 6); stealing a firearm (Count 7); stealing (Count 8); receiving stolen property (Count 9); and tampering in the first degree (Count 10). With respect to Counts 2-10, Green was charged as a prior and persistent offender.
>
> Thereafter, a plea agreement was reached. In exchange for an open plea on Count 2, the State agreed to dismiss the remaining nine counts in the indictment once the plea was accepted.
>
> In August 2016, a plea hearing was held, at which Green entered his guilty plea to the charge of second-degree murder. Green's testimony to the plea court included the following statements: (1) no one forced, threatened or promised him anything to plead guilty; and (2) he was pleading guilty because he was, in fact, guilty of the crime charged. The plea court accepted Green's plea. In October 2016, the court sentenced Green to life in prison.
>
> In April 2017, Green timely filed a *pro se* Rule 24.035 motion for post-conviction relief. Appointed counsel filed an amended motion. Therein, counsel alleged, *inter alia,* that plea counsel was ineffective by "assuring [Green] that if he did not plead guilty, the State would seek the death penalty at trial." The amended motion further alleged that, but for plea counsel's assurance, he would not have pled guilty and would have insisted on going to trial.
>
> In November 2018, the motion court conducted an evidentiary hearing on the matter. Both Green and his plea counsel, Timothy Hunsaker (Hunsaker), testified. Hunsaker testified that he received a letter from the prosecution outlining the plea offer. The letter contained no reference to the death penalty. In addition, the prosecutor made no filings indicating he would seek the death penalty. Hunsaker communicated this fact, as well as the offer outlined in the letter, to Green. When

asked by the State if the death penalty ever came up as a discussion point with Green, Hunsaker said yes:

> A. The topic was brought up yes sir.
> Q. Who brought it up?
> A. I believe Mr. Green had asked me if we did not work out a deal with the State if the State would then file for enhancements to seek the death penalty.
> Q. And what did you tell him?
> A. I had told Mr. Green that there was no indication from your office that any such filing would be done even if we couldn't reach a deal and that we would stick with the way the case was charged and proceed to trial with no seeking of the death penalty by your office.

Hunsaker testified that the death penalty was also brought up by a family member and he relayed that same information to the family member.

Green, on the other hand, testified that Hunsaker advised him that if he went to trial, the prosecutor "was going to push for the first degree murder if I lost and I could receive the death penalty." He felt like the prosecutor "had it out" for him because that same prosecutor had asked for the maximum sentence against him at a previous trial. Green admitted, however, that Hunsaker showed him the offer letter, which made no mention of the death penalty. According to Green, he would not have pled guilty to felony murder if he understood that the prosecutor would not seek the death penalty.

Thereafter, the motion court issued findings of fact and conclusions of law denying post-conviction relief. The motion court found that Green's claim was "not supported by any evidence other than his own testimony and the Court does not find it to be credible."

(Resp't Ex. E at 2-4.) After the motion court denied Petitioner's Rule 24.035 motion, he appealed to the Missouri Court of Appeals, which affirmed. *Id.* Petitioner now seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that federal habeas relief may not be granted unless the state court adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

3

on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2).

"A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." *Tokar v. Bowersox*, 198 F.3d 1039, 1045 (8th Cir. 1999) (internal citation omitted). The issue a federal habeas court faces when deciding whether a state court unreasonably applied federal law is whether the state court's application of clearly established federal law was objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 409 (2000). A state court's decision involves an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010).

A state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 182-83 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

Petitioner alleges constitutionally ineffective assistance of counsel. Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), to prove constitutionally ineffective assistance of counsel, a criminal defendant must show that (1) counsel's performance did not conform to the degree of skill and diligence of a reasonably competent attorney; and (2) as a result, petitioner was prejudiced. Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* In the context of a

4

guilty plea, to show prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 56.

While objectively bad advice of counsel opens the door to a claim of ineffective assistance of counsel, an "important way a [trial] court can help ensure that a plea agreement and corresponding waiver are entered into knowingly and voluntarily is to properly question a defendant about his or her decision to enter that agreement…" *United States v. Andis*, 333 F.3d 886, 890–91 (8th Cir. 2003). A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *United States v. Fitzhugh*, 78 F.3d 1326, 1329 (8th Cir. 1996) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also Tran v. Lockhart*, 849 F.2d 1064, 1068 (8th Cir. 1988) ("[O]nce a person has entered a guilty plea any 'subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.'")

### III. DISCUSSION

Petitioner raises one claim for relief: that he received ineffective assistance of counsel, which resulted in a guilty plea that was not voluntarily made. Specifically, Petitioner alleges that his plea counsel told him that he could receive the death penalty if he went to trial in his case. Petitioner raised this claim during post-conviction proceedings and before the Missouri Court of Appeals on appeal from the denial of his post-conviction motion. Therefore, Petitioner exhausted his claim in state court and it is ripe for resolution here.

5

Petitioner contends that the motion court and appellate court's conclusions were "clearly erroneous in that the courts mistakenly believed that his counsel ruled out the death penalty which was advice that counsel later said he could not and did not give to Petitioner." (ECF No. 1 at 6.) Petitioner raised a similar argument before the appellate court, and the appellate court explicitly addressed it:

> Green's argument, as we understand it, is that the motion court "believed plea counsel ruled out the death penalty…." Our review of the record and findings, however, reveals that the motion court did no such thing. Green's claim below was that he was coerced by plea counsel into pleading guilty because plea counsel said the State would seek the death penalty if Green did not plead guilty. Plea counsel refuted this claim by testifying that he told Green he had no indication that the State would seek the death penalty if he rejected the plea offer and went to trial. Even Green admits in his brief that "[t]here is a difference between ruling out the death penalty … and saying there is 'no indication' it would happen." Contrary to Green's argument, the latter is what happened here.

(Resp't Ex. E at 6.)

As the appellate court acknowledged, "Green's claim turned on a credibility determination. The motion court believed plea counsel and disbelieved Green." (Resp't Ex. E at 6-7.) Under these circumstances, the state courts' determination that Petitioner failed to show ineffective assistance of plea counsel is fully supported by the record and does not contravene or unreasonably apply clearly established Supreme Court precedent. *See, e.g., Wilcox v. Hopkins,* 249 F.3d 720, 724–25 (8th Cir. 2001) (rejecting claim of ineffective assistance based upon plea counsel's alleged misinformation as to likely sentencing consequences of pleading guilty where the state court advised petitioner of applicable minimum and maximum sentence); *Goldsby v. Russell*, No. 4:11CV01268 AGF, 2014 WL 4267479, at *6 (E.D. Mo. Aug. 29, 2014) (deferring to the motion court's determination that plea counsel's testimony at the evidentiary hearing was credible and rejecting Petitioner's contention that counsel failed to tell him about the MOSOP requirement to be eligible for early release); *Twitty v. Russell,* No. 4:10CV1659 RWS, 2013 WL 3091433, at *5

6

(E.D. Mo. June 18, 2013) (deferring to the motion court's credibility determination where the motion court did not believe the habeas petitioner's testimony that his plea counsel guaranteed he would receive a three-year sentence for an armed criminal action charge and probation on remaining counts); *Matteson v. Bowersox,* No. 4:06CV 1605 CDP, 2007 WL 1876472, at *11–12 (E.D. Mo. June 26, 2007) (holding that state court reasonably found that a federal habeas petitioner's claim that his plea was involuntary because his counsel had predicted or promised him a lesser sentence was refuted by the petitioner's representation at the plea hearing that his plea was not induced by any promises or predictions as to what his sentence would be); *Hassell v. Purkett*, No. 4:03CV01632CDP, 2005 WL 1474010, at *3 (E.D. Mo. June 15, 2005) (holding that federal habeas petitioner's ineffective assistance of plea counsel claim failed because petitioner did not show counsel provided him with erroneous advice regarding the maximum sentence he faced if convicted).

      Here, the motion court credited plea counsel's testimony over Petitioner's, and Petitioner has failed to present clear and convincing evidence rebutting the state court's factual determination that "[Petitioner's] claim is not supported by any evidence other than his own testimony and the Court does not find it to be credible." (Findings of Fact, Conclusions of Law, and Judgment in Resp't Ex. B at 121.) The undersigned must defer to the state court's factual determination of the credibility of the witnesses' testimony. *See Grass v. Reitz,* 749 F.3d 738, 743 (8th Cir. 2014) (holding that a state court's credibility findings are owed the same deference as its factual findings, meaning that they "shall be presumed to be correct, 28 U.S.C. § 2254(e)(1), and [the petitioner] has the burden of rebutting this presumption of correctness by clear and convincing evidence") (citations omitted). Moreover, the state court's conclusion is also fully supported by Petitioner's own representations during the plea colloquy and sentencing hearing, and it is dispositive of

Petitioner's habeas claim. Therefore, Petitioner's claim for ineffective assistance of counsel is meritless and is denied.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied. Because Petitioner has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate judgment in accord with this Order is entered on this same date.

Dated this 22nd day of March, 2023.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE